**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

KARIM ISSAC,

           *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant*.

_____/

CASE NO. 19-10124

DISTRICT JUDGE THOMAS L. LUDINGTON

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)

## I.     RECOMMENDATION

Plaintiff Karim Issac challenges Defendant Commissioner of Social Security's final decision denying his claims for Title II Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The case was referred to me for review. (ECF No. 5); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF No. 11), **GRANTING** the Commissioner's Motion, (ECF No. 13), and **AFFIRMING** the Commissioner's final decision.

## II.     REPORT

### A.     Introduction and Procedural History

Plaintiff applied for DIB and SSI on August 28, 2015, alleging he became disabled on August 10, 2015. (ECF No. 8, PageID.381, 388.) The Commissioner denied the claims.

1

(*Id.*, PageID.199-200.) Plaintiff then requested a hearing before an administrative law judge (ALJ), which occurred August 7, 2017. (*Id.*, PageID.129-165.) The ALJ issued a decision on September 25, 2017, finding that Plaintiff was not disabled because he could complete his past relevant work as an interpreter; therefore, he was not entitled to DIB or SSI. (*Id.*, PageID.204-212.)

On March 22, 2018, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for reconsideration after obtaining new evidence regarding Plaintiff's past relevant work and Plaintiff's transferable skills. (*Id.*, PageID.220-221.) On remand, the ALJ held another hearing, (*id.*, PageID.88-126), after which he issued a decision on July 12, 2018, again finding that Plaintiff was not disabled because he could complete his past relevant work as an interpreter; therefore, he was not entitled to DIB or SSI. (*Id.*, PageID.70-80.) This time, the Appeals Council denied review. (*Id.*, PageID.32-35.)

Plaintiff then sought judicial review on January 14, 2019. (ECF No. 1.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 11, 13.)

### B.      Standard of Review

The court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a

preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

## C.      Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

3

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 8, PageID.80.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of August 10, 2015. (*Id.*, PageID.72.) At step two, the ALJ found the following severe impairments: "diabetes mellitus with peripheral neuropathy, hypertension, tachycardia, coronary artery disease, and atrial fibrillation status-post stent placement." (*Id.*) Not included in the list were Plaintiff's anxiety and depression. At step three, the ALJ determined that he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*, PageID.75.)

Before proceeding to the final steps, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [he] is only able to lift and carry nine pounds occasionally and five pounds frequently and stand 15 minutes and sit 20 minutes at a time." (*Id.*) Moving on to step four, the ALJ concluded that Plaintiff could perform his past relevant work as an interpreter. (*Id.*, PageID.78.)

Consequently, there was no need to reach step five, and Plaintiff was not found disabled.[1] (*Id.*, PageID.80.)

### E.    Administrative Record

Plaintiff's narrow argument focuses on the ALJ's failure to consider his depression and anxiety as severe impairments at step two. (ECF No. 11.) The following description of the record is accordingly targeted on materials about his mental or emotional state.

### 1.    Medical Evidence

The vast bulk of the medical records address Plaintiff's physical condition. Of these materials, a few contain relevant observations regarding his mental and emotional state. These records almost uniformly noted normal findings. Many showed him to be alert, oriented, in no acute distress, (ECF No. 8, PageID.618, 620, 626, 729 (no measure of orientation), 759 (no mention of distress)), and, in the few records that measured it, independent in his daily activities, (*id.*, PageID.539, 571). In addition to these findings, other reports stated that his mood (or behavior) and affect were normal. (*Id.*, PageID.570, 574, 636, 639 (without measuring mood), 681, 732, 848, 931 (same but in mild distress), 1059 (same but in mild distress).) In still others, his general condition, encompassing alertness, orientation, distress, and anxiety, was within normal limits. (*Id.*, PageID.604, 606.) Only a handful reported anxiety or depression,[2] without any findings or explanation.

---

[1] The ALJ's findings were almost identical to the findings in the 2017 decision, except the RFC in the earlier decision found Plaintiff capable of performing "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [he] requires a sit-stand opinion (able to sit for two hours at a time and six hours in a workday and stand 10 to 15 minutes at a time)." (*Id.*, PageID.209.)

[2] One scrawled note might also state "anxiety," but the handwriting is poor and no findings or explanations are added to illuminate it. (*Id.*, PageID.610.)

6

(*Id.*, PageID.540, 743, 833, 914, 1019, 1042.)[3] As for medical opinions, Dr. R. Patel examined Plaintiff in October 2007 and found no mental limitation. (*Id.*, PageID.630.) In at least one record, from September 2014, Plaintiff is noted to have denied experiencing depression or anxiety. (*Id.*, PageID.639.)

Plaintiff began receiving psychiatric treatment due to a court order after he was arrested for domestic assault. (*Id.*, PageID.116-118, 774.) He had never before received mental health services. (*Id.*, PageID.774, 817.) The records from Easter Seals, stretching from August 2015 to November 2015, state that Plaintiff reported depression and anxiety, with associated sleeping problems, after learning of his wife's affair and being fired from work due to the domestic assault charges. (*Id.*, PageID.767, 774, 810.) During the session, he was noted to be cooperative, have normal psychomotor activities, but he displayed a depressed mood, blunt affect, and soft voice. (*Id.*, PageID.769-770.) His thought process was ruminative and his associations were circumstantial, but his thought content and orientation were normal, his impulse control and judgment were fair, and his concentration was adequate. (*Id.*, PageID.770-771.)

In another session the same month, he appeared "[s]omewhat depressed" and ruminative, but with proper orientation and intact judgment. (*Id.*, PageID.774.) He had no issues with personal care, although he needed medications to get six hours of sleep per night. (*Id.*, PageID.775.) He was cooperative, his mood was depressed but also "half and

---

[3] Only one such record elaborated on his psychiatric state, but it did so by providing what appear to be Plaintiff's subjective reports of his mood swings and worsening anxiety and depression, and that his condition had affected his relationships. (*Id.*, PageID.743.)

half," and his speech was monotone but within normal limits. (*Id.*, PageID.778.) Otherwise, the findings were normal: orientation, affect, psychomotor activity, thought process (but ruminative as well), thought content, concentration, impulse control, and judgment. (*Id.*, PageID.778-779.)

The notes also indicated he had substantial functional limitations, but did not describe any or explain how this conclusion was reached. (*Id.*, PageID.776.) In the list of different functional capacities, only one was marked as limited: his ability to live alone. (*Id.*, PageID.777.) In explanation, the report simply stated he "would feel 'lonely' if he had to live by himself." (*Id.*) But that could not have been a current issue because he lived with his brother. (*Id.*, PageID.774.) No other limitations are noted, including in his ability to maintain his routine. (*Id.*, PageID.777.) He had noted elsewhere that only "[s]omtimes" did he "feel[] unmotivated to do activities." (*Id.*, PageID.774.)

In September 2015, he returned to Easter Seals reporting continued depression and anxiety. (*Id.*, PageID.817.) On examination, he was depressed and had soft speech, but his attitude was cooperative, his psychomotor activity was normal, his thought process was goal directed, his thought content was normal, his concentration was adequate, his impulse control and judgment were fair, and his orientation was normal. (*Id.*, PageID.820-821.) Plaintiff was discharged from Easter Seals in November 2015. (*Id.*, PageID.810.)

At a consultative examination—part of his application for disability benefits—with Dr. Habib Gennaoui in January 2016, Plaintiff stated he was experiencing severe depression accompanied by anxiety, insomnia, and lack of motivation. (*Id.*, PageID.838.) The examination notes stated that he was alert and oriented but "is feeling very depressed."

8

(*Id.*, PageID.839.) On that basis—nothing else was mentioned about the subject—Dr. Gennaoui concluded that Plaintiff was suffering from severe depression and anxiety. (*Id.*, PageID.840.)

Also in the record are reports from Tri-County Counseling Services. (*Id.*, PageID.845.) The earliest report noted the following findings: Plaintiff was neat and cooperative; his mood was dysphoric but not anxious; his speech was coherent; his thought process was logical; his thought content was appropriate; he was fully oriented; his affect was appropriate; his psychomotor behavior was unremarkable; and his attention, memory, and insight were fair. (*Id.*, PageID.953.)

In a letter to the Social Security branch dated September 1, 2016, Dr. Talia Al-Hamando (with Tri-County Counseling) wrote that Plaintiff presented with depression and anxiety, among other things; but regarding his mental health status, she wrote, "Alert, oriented X 3, mood and affect is anxious, speech is coherent, hygiene and grooming is good thought process is logical, no evidence of any psychotic symptoms. Denied any suicidal/homicidal ideation, intellectual functioning is normal." (*Id.*, PageID.960.) At a session that month, he continued to be depressed but admitted he had not taken his medications regularly. (*Id.*, PageID.958.)

In February 2017, Plaintiff reported at Tri-County Counseling that his mood and sleep were "good" with the medication. (*Id.*, PageID.956.) He presented alert and cooperative, with euthymic mood and full orientation. (*Id.*) The psychiatrist concluded that his depression was "well controlled." (*Id.*) In a note from Tri-County Counseling dated June 2017, Plaintiff reported a recent urological surgery "so he can perform sexually" and

also noted that "once he gets disability, he'll start a new family." (*Id.*, PageID.947.) At that session, the examination revealed the following: he appeared neat and cooperative; his speech was normal; his thought processes were normal; his associations were intact; he had no abnormal thoughts; he had no suicidal or homicidal ideation; his insight and judgment were good; his orientation was full; his memory was appropriate; and he was anxious and dysphoric. (*Id.*, PageID.948.)

As part of Plaintiff's application process, Dr. Leonard C. Balunas reviewed the record on January 7, 2016. (*Id.*, PageID.177.) Dr. Balunas summarized the evidence as showing that Plaintiff had depressive disorder, but his divorce was ongoing and the examination findings (aside from memory issues) were normal. (*Id.*, PageID.176.) Consequently, Plaintiff's impairment was non-severe. (*Id.*) More specifically, his restrictions in daily living and with concentration were mild, and he had no difficulties with social functioning. (*Id.*, PageID.177.)

## 2.  **Function Reports**

The record contains two function reports. Plaintiff's son filled out the first in 2007 as part of Plaintiff's prior application for benefits. (ECF No. 8, PageID.167-168, 444-454.) Asked how Plaintiff's conditions impaired functional capacity, his son mentioned only physical issues with his heart, kidney, and lungs. (*Id.*, PageID.444.) Most of the day was spent talking and relaxing, sometimes visiting family or friends. (*Id.*) With his son's help, Plaintiff took care of a wife and daughter. (*Id.*, PageID.445.) Plaintiff had no problems with personal care, but he needed reminders to shower and take medicine. (*Id.*, PageID.445-446.) He cut the grass sometimes and did other chores occasionally, requiring

10

encouragement to do so. (*Id.*, PageID.446.) He could drive and ride in a car, but not alone, due to his heart problems. (*Id.*, PageID.447.) Handling bills and counting change was not a problem, but even before his disability he did not know how to manage a savings account or checkbook. (*Id.*) As for social activities, he spent time with others and attended church and sporting events as a spectator. (*Id.*, PageID.448.)

Plaintiff's son noted that the following abilities were impaired: lifting, bending, walking, climbing stairs, completing tasks, following instructions (he struggled with written instructions but was "pretty good" with spoken commands), and using his hands. (*Id.*, PageID.449.) However, Plaintiff's memory, concentration (he could pay attention "[f]or awhile"), understanding, and ability to get along with others were not impaired. (*Id.*) He got along with authority figures and handled changes in his routine well; but he was not good with stress and he feared for his life because of his bad heart. (*Id.*, PageID.450.)

Plaintiff completed his own function report in September 2015. (*Id.*, PageID.475-482.) What kept him from working, he said, was depression, back pain, "removal of right kidney, stress, chest pain, open heart surgery, diabetes, high blood pressure, [and] fatigue." (*Id.*, PageID.475.) On a typical day, he ate, took medication, watched television, and went to a coffee shop "to remove the stress and depression." (*Id.*, PageID.476.) He no longer took care of anyone. (*Id.*) He still had no problems with personal care but continued to need reminders to eat, shower, and take his medication. (*Id.*, PageID.476-477.) He used to do outdoor work at home, but he now lived in an apartment and no longer did such tasks because of his condition. (*Id.*, PageID.477.) He left home every day (to alleviate his depression) and could go out alone and drive. (*Id.*, PageID.478.) Now, he could pay bills,

count change, *and* handle savings accounts and checkbooks. (*Id.*) He talked with others every day, on the phone or when at a coffee shop. (*Id.*, PageID.479.) He needed no reminders to go to church, which he attended every Sunday and on holidays. (*Id.*) He had no problems getting along with others and nothing had changed in his social activities since the onset of his conditions. (*Id.*, PageID.480.)

His condition affected various abilities: lifting, squatting, bending, standing, reaching, walking, kneeling, seeing, and memory. (*Id.*) Unaffected were, among other things, completing tasks, concentrating, understanding, following instructions (written and verbal were "not a problem"), and getting along with others, including authority figures. (*Id.*, PageID.480-481.) At the same time, he also wrote that he could not pay attention "very well." (*Id.*, PageID.480) Similarly, he did not handle stress "very well," and he also noticed that he "think[s] to[o] much." (*Id.*, PageID.481.)

### 3. 2017 ALJ Hearing

At the 2017 ALJ hearing, Plaintiff testified that he stopped working in August 2015 because of his heart trouble and marital issues, which ended in divorce after he discovered his wife's infidelity. (*Id.*, PageID.114, 35-136.) These problems led to anxiety. (*Id.*, PageID.136.) He attended church but not the movies. (*Id.*, PageID.139.) He could not work because of anxiety, he said, suggesting it was related to his ex-wife. (*Id.*, PageID.142 ("I've got anxiety. I don't feel good because what my wife did to me plus the diabetes, the heart problem.").)[4] He had been seeing a psychiatrist to deal with the divorce, and he was taking

---

[4] The transcripts from Plaintiff's testimony contain copious grammatical errors, which I note here instead of cluttering the quotations with "[*sic*]."

12

Zoloft. (*Id.*, PageID.143.) Since the divorce, he had had surgery to help sexual performance, and he had taken medication to the same end on a couple occasions, all in the hopes of going back to a normal life and finding "another woman." (*Id.*, PageID.145-146, 149.) He intended to start a new family when he received his Social Security benefits. (*Id.*, PageID.149-150.)

His bad marriage led him to gamble at concan, a card game using 104 cards, in a coffee shop for about the last two years. (*Id.*, PageID.151, 154.) Usually he played in the afternoon, but sometimes he played until midnight. (*Id.*, PageID.153.) He could not play for more than one hour, though. (*Id.*, PageID.154-155.)

He mentioned that he would think about himself as a "disappointed guy. I can't like normal or something like that." (*Id.*, PageID.59.) At night, he slept only a few hours because he continued ruminating on his problems. (*Id.*, PageID.160.) Asked why he could no longer work as an interpreter, he said his heart problem and diabetes prevented him. (*Id.*, PageID.144.)[5]

### 4.    2018 ALJ Hearing

At his second hearing, Plaintiff testified that his children remained close to him throughout the divorce and supported him financially. (*Id.*, PageID.92-93.) He had translated for the army on a one-year contract, but completed only a little more than seven months due to his heart problem, which he said included a stroke. (*Id.*, PageID.95-96, 106.) They extensively discussed his work translating in Iraq in 2003, where he spoke to

---

[5] A vocational expert then testified, but because this was not the final hearing and because the testimony is largely irrelevant to Plaintiff's narrow argument, I will not summarize it. (*Id.*, PageID.162-165.)

individuals in English, Arabic, and Chaldean, and also reviewed documents. (*Id.*, PageID.96-108.) He would have physical difficulty returning to that work because, he said, "[m]y knees, my back, my neck, my heart. That's the most important things I have now." (*Id.*, PageID.109.)

He had been receiving treatment for his depression and anxiety. (*Id.*, PageID.111-112.) The treatment was ordered by a judge after Plaintiff's arrest sometime around his divorce. (*Id.*, PageID.116-118.) Asked "[w]hat symptoms are you experiencing with your mental health," Plaintiff responded,

> I feel sleepy. I can't stand in my feet. I've got sugar diabetes. I've got numb. All these, they don't let me allow to work because the owner of business, he's scared to hire me because I've got the heart problem and diabetes problem and cholesterol problem and blood pressure problem, everything.

(*Id.*, PageID.112-113.) Redirected to his mental issues, he explained that he felt "bad and sad every day like crying" due to his divorce and poor health. (*Id.*, PageID.113-114.) These "symptoms" had begun in 2003 and lasted into the present. (*Id.*, PageID.114.) The Zoloft helped sometimes, but not others. (*Id.*) He elaborated, "I don't feel myself I'm getting okay with this medicine. Sometimes it makes me lazy, depressed, anxiety, sitting by myself in my room, start crying, thinking of all these circumstances that are surrounding me." (*Id.*, PageID.114-115.)

The vocational expert (VE) then testified that Plaintiff, if limited to sedentary work, could return to his translation job as it is generally performed (but not as he had performed it). (*Id.*, PageID.120-121.) Even though he had had the job only for about seven months, and the work usually takes a couple years to learn, he had developed the requisite

knowledge base for the work due to his background. (*Id.*, PageID.121, 123.) He could still perform the translator job if he was further limited to lifting 10 pounds occasionally and 5 pounds frequently, sitting for 20 minutes at a time, and standing for 15 minutes. (*Id.*, PageID.121-122.)[6]

## F.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[7] carve the evidence into two categories, "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513, 416.913 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an

---

[6] The RFC differs slightly from the hypothetical the ALJ posed to the VE: the RFC limits Plaintiff to lifting 9 pounds occasionally, whereas the hypothetical limited him to 10 pounds occasionally. (*Id.*, PageID.75, 121.) Disjunctions between the RFC and the VE hypotheticals can merit remand, *see, e.g., Morris v. Comm'r of Soc. Sec.*, 2019 WL 3755272, at *13-14 (E.D. Mich. July 18, 2019), *rep. & rec. adopted by* 2019 WL 3753806 (E.D. Mich. Aug. 8, 2019), but Plaintiff has not only failed to raise the issue, he has not addressed physical limitations at all. Moreover, it is not apparent than a one-pound discrepancy is meaningful. Therefore, I will not address this issue.

[7] Various regulations were amended after the claim was filed. See, e.g., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). The governing regulations here, however, expressly apply to claims filed before March 27, 2017, like Plaintiff's. See 20 C.F.R. § 404.1527.

individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527, 416.927. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. §§ 404.1527(c), 416.927(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, she is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also*

*Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling (SSR) 96-7p, 1996 WL 374186

(July 2, 1996) and SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).[8] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. §§ 404.1529, 416.929 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*,

---

[8] The Commissioner rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy. SSR 16-3p, 2016 WL 1119029, at *1. The underlying regulation, however, has remained materially unchanged. *See* 20. C.F.R. §§ 404.1529(c), 416.929(c).

749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 16-3p, 2016 WL 1119029, at *5; SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. §§ 404.1527(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.    Analysis

Plaintiff makes a short—less than three full pages—and targeted argument that the ALJ erred by not classifying his depression and anxiety as severe impairments at step two. (ECF No. 11, PageID.1141-1143.) "An impairment or combination of impairments is not severe if it does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "Basic work activities," in turn,

include the following: "Understanding, carrying out, and remembering simple instructions"; "Use of judgment"; and "Responding appropriately to supervision, co-workers and usual work situations." 20 C.F.R. §§ 404.1522(b)(3)-(5), 416.922(b)(3)-(5). Generally, if an impairment imposes no or "mild" limitations, the ALJ "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

At step two, the ALJ offered a lengthy explanation for his conclusion that Plaintiff suffered at most mild limitations from his anxiety and depression, which thus were not severe. He explained that few objective findings supported Plaintiff. (ECF No. 8, PageID.73.) The problems stemmed from his divorce and losing his job; but after late 2015, he had improved as evidenced by his erectile dysfunction surgery and hopes to start a new family. (*Id.*) Plaintiff's sleep was adequate at six hours with medications, his daily routine and personal care were undisrupted by his condition, and his intellectual functioning was normal "at virtually every office visit," the ALJ wrote. (*Id.*) The objective evidence from Easter Seals, the ALJ noted, displayed largely normal functional findings and also improvement with the depression. (*Id.*) The ALJ also canvassed the records from Tri-County Counseling, again noting the unremarkable findings. (*Id.*, PageID.74.) In addition, the ALJ observed that Plaintiff "had normal mood and affect at visits with other providers." (*Id.* (*citing id.*, PageID.931 (emergency room visit)).) Great weight was given to Dr. Balunas's opinion that Plaintiff's impairment was non-severe, given that it matched the evidence of his unhindered daily activities and social skills; in particular, the ALJ noted

the function report completed by Plaintiff's child, which flagged no issues with concentration, understanding, getting along with others, and the like. (*Id.*)

Finally, the ALJ considered four specific areas of mental functioning: (1) in understanding and remembering information, the ALJ noted that Plaintiff successfully played cards with others using a 104-card deck; (2) in interacting with others, the ALJ observed evidence from the son's report that Plaintiff had good relationships, attended church and other events, and got along with others, and that he gambled frequently; (3) in concentration, the ALJ found only a mild limitation, noting again that he could play card games and attend events; and (4) in managing himself, the ALJ noted that Plaintiff is independent. (*Id.*, PageID.74-75.)

The first leg of Plaintiff's attack on this analysis is to simply recount evidence from Easter Seals, such as that he had depressed mood, was diagnosed with depression, and received prescription treatment. (*Id.*, PageID.1141-1142.) Other findings are also flagged, like his monotone speech and ruminative thought process. (*Id.*, PageID.1142.) From there, Plaintiff complains that the ALJ's discussion of this report mentions only "Plaintiff's issues after his wife's infidelity and that Plaintiff had no issues sleeping or with personal care or activities of daily living." (*Id.* (*citing id.*, PageID.73).) Then comes the conclusion regarding this evidence: "The Plaintiff's depression and anxiety cause issues with concentration, persistence, and pace. It follows that a depressed mood, guarded behavior, monotone speech, and ruminative thought process would significantly affect a person's ability to concentrate and perform work activities." (*Id.*) Plaintiff next states,

Next, the ALJ discusses additional records from Easter Seals citing that the records show clear improvement and no positive findings as of September 28, 2015. (R. 42 citing R. 781). However, this report still indicated a depressed mood on mental exam. The Plaintiff's psychiatrist noted as of December 9, 2016, the Plaintiff displayed an anxious mood and affect and was taking prescribed medications of Remeron and Zoloft. (R. 803). The latest mental health report from September 2017 indicates that the Plaintiff is still taking medication of Zoloft for his depression. (R. 1081). The ALJ did not discuss that the Plaintiff displayed abnormal findings on mental exam or that the Plaintiff is continuing to take medication for depression. It is improper to cite parts of the record to support a decision to deny benefits without also dealing with the parts which help the claim. *Howard v. Comm'r of Soc. Sec.*, 276 F. 3d 235, 240 (6th Cir. 2002).

(*Id.*, PageID.1142-1143.)

I am unpersuaded by this argument. For one thing, "the diagnosis of a condition, in and of itself, says nothing about the severity of the condition or what limitations it will impose on Plaintiff, let alone whether those limitations are disabling." *Gorney v. Comm'r of Soc. Sec.*, 2018 WL 8345278, at *9 (E.D. Mich. Sept. 12, 2018) (*citing* among other cases, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)), *rep. & rec. adopted by* 2019 WL 1198697 (E.D. Mich. Mar. 14, 2019). Further, Plaintiff does not say what evidence of diminished daily activities the ALJ should have cited. Nor do I see any in the Easter Seals documents. The only limitation they mention was his self-reported fear of living alone. (*Id.*, PageID.777.) In fact, the report stated that he had no limitations in maintaining his routine or completing personal care, and he also admitted that he only "[s]ometimes" lacked motivation to do activities. (*Id.*, PageID.774, 777.) And in his function report, he stated that his social life had not changed since the onset of his conditions. (*Id.*, PageID.480.)

It seems that Plaintiff wishes the ALJ would have placed greater weight on the few negative findings in the Easter Seals material, such as his monotone speech and ruminative thought processes. But the Court cannot reweigh the evidence. Mulli*ns v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary."). Even so, Plaintiff himself plucks just a few pieces of evidence of dubious value. He does not explain, for example, why a monotone voice or ruminative thought process would significantly hamper basic work activities. While a depressed mood might come closer, Plaintiff's narrow focus on these discrete findings misses the thrust of the examination results, which consisted of largely normal findings, particularly regarding functional areas such as concentration and judgment. His orientation, judgment, concentration, impulse control, affect, thought content, and psychomotor skills were almost always, if not always, normal. (*Id.*, PageID.770-771, 774-775, 778-779.) And even though his thought process was ruminative and speech monotone, both were noted to be normal at the same time. (*Id.*, PageID.778-779.) Similarly, the non-psychiatric reports that included information about his mental and emotional state showed largely normal results. (*Id.*, PageID. 539, 570, 571, 574, 618, 620, 626, 636, 639, 681, 729, 732, 759, 848, 931, 1059.)

Plaintiff also fails to offer any medical opinion evidence to support his argument. Dr. Balunas's 2016 opinion is the only such evidence in the record directly dealing with the severity issue, and he found against Plaintiff having a severe mental impairment. (*Id.*,

PageID.176-177.)[9] In similar circumstances, this Court has upheld the determination that a plaintiff's impairments were not severe. *See Johnson v. Comm'r of Soc. Sec.*, 2013 WL 812081, at *6 (E.D. Mich. Feb. 12, 2013) ("Here, Plaintiff simply fails to point to any evidence that contradicts the findings of the state agency consultant. Moreover, the record does not include an opinion from a treating source, or an examining source, indicating that Plaintiff is disabled, or identifying limitations greater than those found by the state agency consultant. Without a differing opinion, the ALJ was entitled to rely on the findings of the state agency consultant."), *rep. & rec. adopted by* 2013 WL 811788 (E.D. Mich. Mar. 5, 2013).

Likewise, Plaintiff glosses over other evidence the ALJ cited. The function report from Plaintiff's son, for example, showed that he was independent in personal care, could complete some chores, attended social events, and got along with others, and that his memory, concentration, and understanding were unimpaired. (*Id.*, PageID.445-446, 449-450.) Of course, this evidence came from 2007, well before the alleged onset date in 2015. However, Plaintiff's 2015 function report repeated many of the same assertions and others, including that he managed his personal care, talked with others every day, went to a coffee shop, attended church, and got along with others, and that his condition had not affected his social activities, concentration, understanding, or ability to complete tasks and follow

---

[9] Dr. Gennaoui noted severe depression and anxiety, but provided no explanation and no discussion of whether he meant to suggest that Plaintiff's limitations were severe enough to satisfy step-two requirements. (*Id.*, PageID.840.) In any case, Plaintiff does not rely on Dr. Gennaoui.

instructions. (*Id.*, PageID.476-481.) This evidence, which Plaintiff has failed to address, provides support for the ALJ's conclusion.

I am also unconvinced by Plaintiff's argument regarding the ALJ's failure to mention the findings of depressed mood in a report from September 28, 2015. (ECF No. 11, PageID.1142.) That report indeed shows a depressed mood; otherwise, the findings were normal. (*Id.*, PageID.820-821.) Again, it is unclear how a finding of depressed mood translates to a significant limitation in his ability to complete basic work activities. *See* 20 C.F.R. §§ 404.1522(a), 416.922(a). Plaintiff's bald assertion to that it does is not sufficient to flesh out the ALJ's error. (ECF No. 11, PageID.1142.)

For the similar reasons, I am unswayed by Plaintiff's criticism that the ALJ missed the fact that Plaintiff continued to take medication into 2017 and also the fact that, on one occasion, he had an anxious mood. (*Id.*, PageID.1142 (citing ECF No. 8, PageID.845, 1127).) The ALJ did note Plaintiff's medication use, stating that in February 2017 the Plaintiff "reported good mood and sleep with medication." (ECF No. 8, PageID.74 (*citing id.*, PageID.956).) Plaintiff does not describe how a lone finding of anxiety amounts to significant limitations. And that mention of anxiety came in a wave of normal findings, including that his "intellectual functioning is normal." (*Id.*, PageID.845.)

To the extent Plaintiff suggests the ALJ ignored the evidence Plaintiff cites, it is well established that the "ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted). The ALJ certainly has covered more of the evidence than Plaintiff has, and there is no reason to believe he failed

to consider it all. Plus, as noted above, Plaintiff has not explained why the evidence he cites merits a different finding.

The final part of Plaintiff's argument states in full:

> The ALJ's failure to properly classify the Plaintiff's depression and anxiety as severe impairments is not harmless error. Had the ALJ properly found depression and anxiety to be severe impairments it would likely follow that the Plaintiff would have been limited to unskilled work, thus a finding of disabled would be required by Medical Vocational Rule 201.06, accordingly remand is required.

(ECF No. 11, PageID.1143.) This argument is fatally underdeveloped. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation omitted)). To begin, Plaintiff does not explain how classifying his depression and anxiety as severe would lead to him being precluded from skilled work. He has not posited any specific limitations that these impairments should have been found to impose; much less has he described how these limitations relate to skilled work. Also, the cursory citation to Medical Vocational Rule 201.06 adds little to the argument, as the Rule goes undiscussed and unapplied.

These failures are critical because a finding of severity is perfectly consistent with the further determination that the impairment "has 'little effect' on the claimant's ability to perform basic work related activities." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Id.* at 429

(citation omitted). Moreover, an ALJ must consider both severe and non-severe impairments when crafting the RFC. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 802, 803 (6th Cir. 2003) (holding that where the ALJ found a severe impairment at Step Two, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence"); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (finding it was harmless error for the ALJ to classify impairment as non-severe where the analysis moved past step two, because the ALJ must consider both severe and non-severe impairments in determining RFC).

Here, as noted, Plaintiff has not hinted at the additional limitations imposed by his depression and anxiety—he simply asserts that they should have been considered severe, which through some untold logic would lead to the further conclusion that he is limited to unskilled work, and through one final implicit leap, this limitation would render him disabled. All of the meaningful moves in this argument come from unexpressed assumptions. Without more, then, Plaintiff's bare assertions are not enough to present an argument. To the extent he has made an argument, it is too riddled with holes to accept.

Thus, the ALJ's step-two findings was not erroneous. And because he nonetheless had to consider all non-severe impairments when constructing the RFC, and Plaintiff has not specified any additional limitations the RFC should have included, I would suggest that any errors at step two were harmless. *See Griffeth*, 217 F. App'x at 428-428; *Maziarz*, 837 F.2d at 244.

## H.    Conclusion

For these reasons, I conclude that substantial evidence supports the Commissioner's

denial of benefits and I recommend **DENYING** Plaintiff's Motion, (ECF No. 11),

**GRANTING** the Commissioner's Motion, (ECF No. 13), and **AFFIRMING** the

Commissioner's final decision denying benefits.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14

days after being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States

v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some

objections, but failing to raise others, will not preserve all the objections a party may have

to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to

be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any

objection must recite precisely the provision of this Report and Recommendation to which

it pertains. Not later than 14 days after service of an objection, the opposing party may file

a concise response proportionate to the objections in length and complexity. Fed. R. Civ.

P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue

raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Date:  November 27, 2019                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge


## CERTIFICATION

    I hereby certify that the foregoing document was electronically filed this date
through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: November 27, 2019                     By s/Kristen Castaneda
                                            Case Manager